1  STEVEN M. WEINBERG (SBN 235581)
   smweinberg@holmesweinberg.com
2  SHARONI S. FINKELSTEIN (SBN 271829)
   sfinkelstein@holmesweinberg.com
3  HOLMES WEINBERG, PC
   30765 Pacific Coast Highway, Suite 411
4  Malibu, California  90265
   Tel: (310) 457-6100
5  Fax: (310) 457-9555
6
7
   Attorneys for Plaintiff
8  Masterfile Corporation

9

10             UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13

14 MASTERFILE CORPORATION,          Case No. 12-CV-00850 R (Ex)

15            Plaintiff,            **PLAINTIFF'S OPPOSITION TO
                                    DEFENDANTS' MOTION FOR
16                                  SUMMARY JUDGMENT IN LIEU
                                    OF ANSWER; MEMORANDUM OF
17      v.                          POINTS AND AUTHORITIES**

18 CHAGA INTERNATIONAL, a Nevada
   corporation; STEVE GOULD, an
19 individual; and MICHAEL TIDD, an
   individual,                      HEARING
20                                  Date:      Monday, June 18, 2012
            Defendants.             Time:      10:00 a.m.
21                                  Courtroom: 8-2nd Floor

22

23

24

25

26

27

28

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

- i -

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS .....................................................................2

        A.      The Defendant Chaga International is a Repeat Infringer..................2

        B.      The Copyright Office's Rules Regarding Registration of Collective
                Works by Image Libraries........................................................3

        C.      Masterfile is the Owner of the Copyright in All of the Images for
                *All* Purposes, Not Just Registration, and Masterfile's Registration
                Process for the Registrations at Issue Fully Complies with Section
                409 of the Copyright Act and with Established Copyright Office
                Procedures ..........................................................................5

III.    ARGUMENT............................................................................................7

        A.      Masterfile's Registrations Meet the Requirements of the Copyright
                Act .....................................................................................7

                1.      Masterfile's Applications for Copyright Registration and the
                        Resulting Registrations Issued by the Copyright Office
                        Satisfy Section 409 and Copyright Office Procedures..............7

                        a.      Registration is Not a Prerequisite for Protection ............7

                        b.      Masterfile's Registrations Comply with Section 409 ......8

                2.      Defendants' Argument that Section 409 Unambiguously
                        Requires Claimants to List the Titles and Authors of Each
                        Work Intended to be Covered by the Registration is Wrong
                        under the Ninth Circuit Law of Statutory Construction...........10

                3.      The Masterfile Registrations Comply with Copyright Office
                        Regulations, Rules and Procedures .........................................13

                4.      Defendants' Argument is Contrary to the Well-Established
                        Rule That Registration of a Compilation Work Extends to
                        the Individual Works Where the Owner of the Collection
                        also Owns the Underlying Works ...........................................16

                5.      Technical Issues with the Registration Cannot be Used to
                        Impede Enforcement against Infringement..............................17

                6.      Defendants' Claim That They Have a Right to Know All of
                        the Authors and Titles of the Component Works Comprising
                        the Masterfile Compilation is a Red Herring and Contrary to
                        Law.........................................................................20

        B.      Granting Defendants' Motion Would Be Against Important Public
                Policies, Would Put Back into the Law the Loophole Section
                411(b) was Intended to Close, and Would Open the Door to

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

- ii -

1

Endless Infringement that Image Libraries Would be Unable to Stop ...................................................................................21

2

C.   This Court Can Stay Decision on this Motion Pending the Ninth Circuit's Decision in *Alaska Stock* ....................................................23

3

4

IV.   CONCLUSION ...........................................................................24

5

6

7

8

9

10

11

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Cases**

3

*Batjac Prod., Inc. v. Good Times Home Video Corp.*, 160 F.3d 1223 (9th Cir. 1998) ...............................................................................................13

4

*Bodine v. Graco, Inc.*, 533 F.3d 1145 (9th Cir. 2008) .........................................11

5

*California Ass'n for Health Servs. at Home v. Sebelius*, No. 11-CV-10618, 2012 WL 893782 (C.D. Cal. Mar. 13, 2012).......................................................23

6

7

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .13, 15

8

*Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145 (9th Cir. 2006) ......................15

9

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir. 1994) ..20

10

*Educational Testing Servs. v. Katzman*, 793 F.2d 533 (3d Cir. 1986)...................16

11

*Henderson v. Lindland*, No. 11-CV-01350, 2011 WL 2357662 (C.D. Cal. June 14, 2011) .................................................................................................... 1

12

*In re Moses*, 167 F.3d 470 (9th Cir. 1999) ..........................................................15

13

*In re Napster, Inc., Copyright Litigation*, 191 F. Supp. 2d 1087 (N.D. Cal. 2002)) ..................................................................................................................19

14

*King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812 (M.D. Tenn. 2006)...............14

15

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir. 2003) .13, 18

16

17

*Landis v. North Am. Co.*, 299 U.S. 248 (1936).....................................................23

18

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F. 2d 857 (9th Cir. 1979)................23

19

*Lopez v. American Express Bank, FSB*, No. 09-CV-07335, 2010 WL 3637755 (C.D. Cal. July 13, 2010) ...........................................................................23

20

*Marascalco v. Fantasy, Inc.*, 953 F.2d 469 (9th Cir. 1991) ...........................13, 15

21

*Masterfile Corp. v. Martin Gale d/b/a/ Gale Team, et al.*, No. 09-CV-966, slip op (D. Utah Oct. 4, 2011) ...............................................................................14

22

23

*Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir.1983).....23

24

*Midway Mfg. v. Artic Intern., Inc.*, 547 F. Supp. 999 (N.D. Ill. 1982) ..................22

25

*Morris v. Bus. Concepts, Inc.* 283 F.3d 502 (2d Cir. 2002) ...........................13, 16

26

*Motorola, Inc. v. Pick*, No. 04-CV-2655, 2004 WL 5472092 (C.D. Cal. June 22, 2004) .................................................................................................... 1

27

28

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

*Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478 (7th Cir. 1982) .................................................................................. 20

*Nat'l Muffler Dealers Ass'n v. United States*, 440 U.S. 472 (1979) ...................... 15

*Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S. Ct. 1237, 176 L.Ed.2d 17 (2010). ................................................................................................... 17

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008); .... 13

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ................................. 18

*Sierra Med. Servs. Alliance v. Maxwell-Jolly*, No. 10-CV-04182, 2011 WL 3837076 (C.D. Cal. Aug. 29, 2011) .......................................................... 23

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ................................................... 13

*Societe Civile Succession Richard Guino v. Beseder Inc.*, No. 03-CV-1310, 2006 WL 2917349 (D. Ariz. Oct. 6, 2006) ............................................................. 22

*St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,* 573 F.3d 1186 (11th Cir. 2009) .......................................................................................... 18

*Stewart v. Apple, Inc.*, No. 10-CV-01012 RSL, Dkt. No. 25 (W.D. Wash. Nov. 8, 2010) ..................................................................................................... 16

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775 (9th Cir. 2002) ..................................................................................................... 13

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001); ........................................................ 15

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011), ....... 18

*United States v. Daas*, 198 F.3d 1167 (9th Cir.1999) .......................................... 11

*United States v. Haggar Apparel Co.*, 526 U.S. 380, 392–93 (1999) .................... 13

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ............................................. 13

*Urantia Found. v. Maaherra*, 114 F.3d 955 (9th Cir. 1997) ................................. 18

*Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279 (4th Cir. 2003) ............................... 16

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

**Constitutional Provisions:**

U.S. Constitution, Article I, Section 8, Clause 8 ....................................................24

**Statutes:**

17 U.S.C. § 101 ...........................................................................................3, 14, 17

17 U.S.C. § 102 ................................................................................................... 8

17 U.S.C. § 103 ................................................................................................17

17 U.S.C. § 201(d) ..........................................................................................4, 5

17 U.S.C. § 408 ....................................................................................8, 12, 14

17 U.S.C. § 409 .........................................................................................passim

17 U.S.C. § 411 ................................................................................................18

17 U.S.C. § 412 ................................................................................................21

**Regulations:**

37 C.F.R. § 202.3(b) ................................................................................5, 15, 16

**Rules:**

Central District Local Rule 7-12 ........................................................................ 1

**Other Authorities:**

Compendium of Copyright Office Practices II ...........................................6, 13, 14

David Nimmer, 2 *Nimmer on Copyright* (2010).....................................16, 17, 18

Paul Goldstein, *Goldstein on Copyright* § 3.15 (2005).........................................16

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Masterfile Corporation ("Masterfile") files this Memorandum of Points and Authorities in Opposition to Defendants' motion for summary judgment. Defendants' motion is improper, and should be dismissed for three primary reasons: (1) Defendant Chaga International ("Chaga") is a repeat copyright infringer and cannot hide behind the asserted defenses raised on its motion to escape liability; (2) Defendants' legal analysis is erroneous as a matter of law; and (3) ruling in Defendants' favor would be against public policy, having a disastrous result for the millions of works that have been registered pursuant to the Copyright Act and the applicable Copyright Office rules. It would open a floodgate of infringement by effectively destroying the ability of stock image libraries like Masterfile to seek and obtain the remedies under the Copyright Act they need to curtail infringement on behalf of the artists that they represent – statutory damages and attorneys' fees. Alternatively, because the same legal issue on which Defendants' motion is based is pending before the Ninth Circuit, this Court may, under principles of judicial economy, stay this motion pending the Ninth Circuit's decision.[1]

---

[1] Defendants failed to lodge a proposed Statement of Uncontroverted Facts and Conclusions of Law as required by Local Rule 56-1. This failure warrants outright denial of Defendants' motion for summary judgment. Central District Local Rule 7-12 ("The failure to file any required paper may be deemed consent to the granting or denial of the motion."). *See also Motorola, Inc. v. Pick*, No. 04-CV-2655, 2004 WL 5472092, at *3 (C.D. Cal. June 22, 2004) ("failure to provide the Court with a separate statement of uncontroverted facts is fatal to [defendants'] motions for summary judgment."); *Henderson v. Lindland*, No. 11-CV-01350, 2011 WL 2357662, at *2 (C.D. Cal. June 14, 2011) (denying summary judgment where facts were in dispute and the moving party did not lodge a Statement of Uncontroverted Facts and Conclusions of Law).

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

## II.

## STATEMENT OF FACTS[2]

**A.     The Defendant Chaga International is a Repeat Infringer**

This is not the first time that Defendant Chaga has been caught infringing Masterfile's images.  In November 2009, Masterfile discovered that Chaga had used twenty-two (22) of Masterfile's images on some of its websites without authorization.  Gangursky Dec. ¶ 12.  The parties settled that dispute in April 2010 and executed a settlement agreement (the "Settlement Agreement").  *Id.* Approximately one year later, in May 2011, Masterfile learned that Chaga and the individual defendants were using thirty-four (34) of its images without authorization – including eighteen (18) of the *same* images that were previously used without authorization by Chaga and included in the Settlement Agreement, thus violating the Settlement Agreement.  *Id.* at ¶ 13.

---

[2] Accompanying this Memorandum of Law are the Declarations of Tanya Gangursky, dated May 16, 2012 ("Gangursky Dec."), Nancy E. Wolff, counsel to PACA, dated May 14, 2012 ("Wolff Dec."), and Marybeth Peters, former Register of the U.S. Copyright Office, dated May 16, 2012  ("Peters Dec.").  Masterfile also concurrently is filing a Request for Judicial Notice of *Amicus Curiae* briefs that have been filed in two cases pending before the Ninth Circuit that have been referenced by Defendants in their Memorandum of Law and in this Memorandum of Law:  *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09-CV-00061 (D. Alaska 2010), on appeal to the Ninth Circuit, Appeal No. 10-36010 ("*Alaska Stock*"), and *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, No. 10-CV-8034 (D. Ariz. 2010), appeal stayed, Appeal No. 10-16771, Order Staying Appeal entered November 14, 2011 ("*Bean*"), as well as certain publications of the U.S. Copyright Office.  For ease of reference, Defendants' Memorandum of Law on this motion is referenced herein as "Defendants' Brief" and the accompanying Declaration of Oscar Michelen is referred to as the "Michelen Declaration."  Plaintiff also is filing with these documents its Objection to and Motion to Strike portions of the Michelen Declaration and a Statement of Genuine Disputes. We respectfully refer the Court to the Peters, Gangursky and Wolff Declarations and the *Amicus Curiae* briefs for a complete explanation of the relevant facts.

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

**B.** **The Copyright Office's Rules Regarding Registration of Collective Works by Image Libraries**

In 1995, the U.S. Copyright Office, working with the Picture Archive Council of America, Inc. ("PACA"), the trade organization in North America for stock image libraries like Masterfile,[3] ("image libraries" or "libraries") created a procedure for image libraries to register collective works, namely catalogs, owned by the libraries and the individual images contained in those collective works.[4] Peters Dec. ¶ 15; Wolff Dec. ¶¶ 4–5.  Congress has made the United States Copyright Office, a division of the Library of Congress, and the Register of Copyrights (the "Register") responsible for establishing rules and procedures supporting registration and thus making copyrightable works available to the public under the Copyright Act, 17 U.S.C. § 101 *et seq*. (the "Copyright Act" or the "Act").  Peters Dec. ¶ 3.

Because requiring individual registrations of each of the hundreds or thousands of images published simultaneously in printed catalogs by an image library was economically and administratively burdensome on the Copyright Office and copyright owners, the Copyright Office under its regulatory authority created a procedure that allowed for the registration of image library catalogs as "collective works" that covered the catalog as well as each individual image contained in the catalog that was owned by the library.[5]  The Copyright Office

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

---

[3] PACA filed an amicus brief in the *Bean* case that has been stayed by the Ninth Circuit pending resolution of the *Alaska Stock* case.  The PACA Amicus Brief is one of the documents subject to Plaintiff's Request for Judicial Notice, and is referenced in this Memorandum as "PACA Amicus Brief."

[4] Copyright registrations of multiple images by image libraries are "collective works" under the Act in that they are copyrightable "compilations" comprised of individually copyrightable works, here, the individual (i.e., "component") images which are primarily photographs.  *See* 17 U.S.C. § 101 (definitions of "collective works" and "compilations.").  *See also* discussion in *Brief for the United States of America as Amicus Curiae in Support of Reversal, Alaska Stock*, filed February 18, 2011 (hereinafter "USA Amicus Brief") at 4–5.

[5] *See* USA Amicus Brief at 7; Wolff Dec. ¶ 6; Peters Dec. ¶¶ 15–16.

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

1   deemed this procedure consistent with its longstanding interpretation of the

2   Copyright Act as permitting registration of a collective work and the individual

3   works contained in it that the claimant owns, even if the application does not

4   specify the authors and titles of the individual works.  *See* USA Amicus Brief at 2;

5   Peters Dec. ¶¶ 16, 18; *see also* 17 U.S.C. § 201(d).[6]  As a result, many PACA

6   members revised their agreements with contributing photographers and filed

7   copyright registrations for these collective works following the Copyright Office's

8   instructions, with the understanding and expectation that the collective work

9   registration would protect the individual component images. Wolff Dec. ¶ 13;

10  Peters Dec. ¶ 21.

11          When image libraries started offering their collections to customers online in

12  the late 1990s, the Copyright Office confirmed to PACA that image libraries could

13  register their online catalog collective works using the established procedure for

14  registering hardcopy image catalogs as collective works, and assigned a specific

15  Attorney Advisor from the Copyright Office to advise PACA members.  Wolff

16  Dec. ¶ 18; PACA Amicus Brief at 4–6.  This Attorney Advisor instructed PACA

17  members to register these online catalog collective works under the Copyright

18  Office rules for registering automated databases.  Wolff Dec. ¶ 19.  Using this

19  procedure, an image library could use a single registration to register images that it

20  published on its website (which is the online catalog) as a collective work,

21  including each individual image that it owned.  The Copyright Office also

22  instructed the libraries to file new registrations at regular intervals of library-owned

23  new images that that were later published on the website.  Wolff Dec. ¶ 19.

24

25

26  [6] Under 17 U.S.C. § 201(d), if the author of a collective work is also the author of
the component works, or if the authors of the component works transfer all rights
27  in the works to it, the author of the collective work may claim a copyright in the
component works that make up the collective work.
28

- 4 -

The Copyright Office has consistently permitted image libraries to obtain copyright registrations for their digital catalogs following the instructions it provided to PACA and its members in 1995 and as reconfirmed in 1997 and again in 2002.  Wolff Dec. ¶ 24; PACA Amicus Brief at 4–6.  Throughout that time, the Copyright Office examined and accepted registrations for digital catalogs filed pursuant to those instructions, and image libraries like Masterfile relied upon those registrations to monitor and enforce rights in the hundreds of thousands, if not millions, of individual photographs contained in such digital catalogs.  USA Amicus Brief at 18–19; Peters Dec. ¶¶ 17–18.

**C.** **Masterfile is the Owner of the Copyright in All of the Images for *All* Purposes, Not Just Registration, and Masterfile's Registration Process for the Registrations at Issue Fully Complies with Section 409 of the Copyright Act and with Established Copyright Office Procedures**

Masterfile, the copyright claimant for all of the images at issue in this case, not only owns the copyright in each of the collective works that it has registered with the Copyright Office, but it also is the owner by assignment of the copyrights in each of the individual images included in its collective work registrations.  Gangursky Dec. ¶ 11.  As the owner of all of these rights, Masterfile has the statutory right to claim copyright in all of the individual images (sometimes referred to as "component works") that make up the collective work that it has registered.  *See* 17 U.S.C. § 201(d).

Pursuant to its statutory authority, the Copyright Office has issued regulations and rules permitting collective works like image catalogs, with their component images, to be registered as "single works" for registration purposes.  *See* USA Amicus Brief at 5–7.  This includes, under 37 C.F.R. § 202.3(b)(5), permitting single applications for digital collective works, known as automated databases.  *Id.*  The procedures accepted by the Register for automated database

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

1   registrations are set out in the Compendium of Copyright Office Practices II

2   ("Compendium II").[7]  Under the Compendium II, the Copyright Office instructs

3   that when registering an automated database, "the application should name the

4   author of the collective work," and that "[t]he names of the individual authors of

5   separate contributions being registered as part of the claim need not be given on

6   the application."  Compendium II § 615.06.  The Compendium II also states that

7   "[i]f the work being registered was created by a large number of authors, the

8   application will be considered acceptable if it names at least three of those authors,

9   followed by a statement such as 'and [number] others.'"  Compendium II §

10  615.07(b)(3).  This same process was confirmed by the Copyright Office in its

11  communications with PACA.  *See* Wolff Dec. Ex. B and accompanying text;

12  Peters Dec. ¶ 18.

13      In the seventeen copyright registrations covering the images infringed by

14  Defendants, Masterfile followed the Copyright Office procedures:  Masterfile (i)

15  identified itself as the claimant of the collective work and all of the component

16  images; (ii) identified that it became the owner of these component images by

17  assignment (transfer by contract); (iii) included a CD-ROM with copies of all of

18  the component images pursuant to the Copyright Office's instructions; and (iv)

19  identified a minimum of three of the author/photographers who transferred their

20  rights to Masterfile.[8]  Gangursky Dec. ¶¶ 9–10.  In fact, not only did Masterfile

21  identify three authors in nine of the registrations at issue, but in the balance of the

22

23  _____

    [7] The Compendium II is a publicly available manual of the Copyright Office
24  providing advice regarding registrations.  It currently is undergoing revision, but
    the Sections relevant to this motion accompany the Request for Judicial Notice.
25  [8] Defendants' characterization of these registrations as falling into three categories
    (Defendants' Brief at 1) is incorrect – all of the registrations followed the
26  Copyright Office procedures.  Defendants' description of the registration attached
    to the Michelen Declaration as Exhibit 17 actually falls into what Defendants have
27  identified as Category (2).  In other words, the Masterfile registrations at minimum
    identify three authors as permitted under Copyright Office rules.
28

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

seventeen registrations it named *all* of the authors.  *Id.* at ¶ 11.  The three

Masterfile registrations filed prior to 2002 were filed as "catalogs of images

displayed on the Internet" and the fourteen filed after 2002 were filed as "Group

registration for automated database entitled www.masterfile.com."  In preparing

and filing these applications, Masterfile consulted with the assigned Copyright

Office Attorney Advisor and with PACA's counsel.  *Id.* at ¶ 6; Wolff Dec. ¶ 13;

Gangursky Dec. ¶ 6.

## III.

## ARGUMENT

**A.**  **Masterfile's Registrations Meet the Requirements of the Copyright Act**

Defendants' motion is based on the theory that Masterfile's copyright

registrations do not satisfy § 409 of the Act, thus preventing Masterfile from

enforcing its rights in the individual images asserted in this action.  This position is

erroneous.  Masterfile's registrations comply with § 409.  They also comply with

the relevant Copyright Office rules and regulations.  Moreover, even if credence

were to be given to Defendants' argument that Masterfile's applications were

incomplete, the Ninth Circuit and the U. S. Supreme Court have made it clear that

copyright owners should not be thwarted in the enforcement of their rights because

of technical issues relating to the contents of the registration(s) on which the

enforcement is based.

**1.**  **Masterfile's Applications for Copyright Registration and the**
**Resulting Registrations Issued by the Copyright Office Satisfy**
**Section 409 and Copyright Office Procedures**

**a.**  Registration is Not a Prerequisite for Protection

Defendants argue that Masterfile's applications for registration of copyright

should have named all of the authors and identified the titles of each of the

component images in the registered database owned by Masterfile.  This

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

interpretation is contrary to the express language of § 409. The Defendants, and the three decisions on which they rely,[9] misconstrue the applicable Copyright Act provisions.

Under the Copyright Act, copyright *protection* automatically inheres in any "original works of authorship fixed in any tangible medium of expression" the moment a work is "created."  17 U.S.C. § 102(a); *see* USA Amicus Brief at 3. Registration of copyright is not required for protection.  17 U.S.C. § 408. Registration is a prerequisite for bringing copyright infringement actions in most cases[10] and for obtaining certain important remedies under the Copyright Act, but it is not required for protection of the work.  Accordingly, as discussed below, the Ninth Circuit has not allowed imperfections in registrations to thwart copyright enforcement.

### b.   Masterfile's Registrations Comply with Section 409

Section 409 sets out the requirements for the contents of an application for copyright registration.  Significantly – and this is the critical point missed by the Defendants and the cases on which they rely – § 409 speaks *only* to registration of "the work" – in the *singular.*  For example, subsections (2), (6), (7), (8) and (9) state:

> . . . (2) in the case of a *work* other than an anonymous or pseudonymous work, the name and nationality or domicile of the author or authors, and, if one or more of the authors is dead, the dates of their deaths; . . .
> (6) the title of the *work*, together with any previous or alternative titles under which the work can be identified;
> (7) the year in which creation of the *work* was completed;
> (8) if the *work* has been published, the date and nation of its first publication;
> (9) in the case of a compilation or derivative *work*, an identification of any preexisting work or works that it is based on or incorporates, and a

---

[9] Two of these cases are pending before the Ninth Circuit (*Alaska Stock* and *Bean*) and the other, *Muench*, is a district court case in the Second Circuit.
[10] *See* discussion of exceptions *infra* pp. 22–23.

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

brief, general statement of the additional material covered by the copyright claim being registered.

The Defendants claim that this Court should read into § 409 the word "works," in the plural, instead of the singular word "work" and under that interpretation argue that §409 has to be satisfied for *each* component work comprising the collective work.  That argument, and the rationales of the cases on which it relies, is in error.[11]  The term "work" should be read precisely as it exists in § 409, in the singular and not in the plural.  *See* Peters Dec. ¶ 18 (the only title required is the compilation title since that is the work being registered).

This interpretation applies to collective works.  Section 409(9), the subsection that addresses registration of a compilation[12] that incorporates other copyrightable works (such as the works at issue here) only references the "work" – singular – and thus only requires that the § 409 formalities for completing the application be for the primary work – the compilation.  As to works incorporated in the collective work (such as the component images asserted by Masterfile), all that is required is "*an* identification" of such works and "a brief, general statement" of any additional material.[13]  If Congress intended for the subsections of § 409 to apply to all of the individual works incorporated into the registered compilation, the language of the statute would presumably reflect that intent.  But it does not.[14]

Thus, § 409 does not require, as Defendants erroneously claim, that the names of the *authors* of each incorporated work or that the title of each be

---

[11] *See infra* Part III.A.3.

[12] As earlier noted, a "collective work" is a type of compilation under the Copyright Act.

[13] The Copyright Office has accepted without exception general identifications and statements like those in Sections 2 and 6 of Masterfile's registrations as satisfying this requirement.  *See generally* Gangursky Dec. ¶¶ 6, 10 (Copyright Office officials worked with Masterfile in finalizing each registration).

[14] *See* Peters Dec. ¶ 18.

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

identified and tied to each author.[15]  Section 409 only requires that the *copyright claimant – singular –* be identified for the *work – singular*—which in this instance is the registered compilation.  Moreover, since §§ 409(2)–(8) do not distinguish between registration of a single work and a compilation work, it follows that § 409(9), which addresses registration of compilations, only requires that the owner (the claimant) and the title of the *compilation work* – here, the "automated database" website that includes the component images – must be listed on the registration application.

Masterfile is the sole owner/claimant of the compilation and each of the images comprising the registered compilation.  Thus, registration of the compilation and all of its component parts owned by Masterfile is accomplished through registering the compilation as a single work under the Copyright Office rules.  Accordingly, Masterfile's compliance with § 409 as it applies to the single collective work is all that is required, and it so complied by including all of the required information for the collective *work* in its applications for copyright registration. *See* Peters Dec. ¶ 18; Gangursky Dec. ¶¶ 7–11.

> ### 2.  Defendants' Argument that Section 409 Unambiguously Requires Claimants to List the Titles and Authors of Each Work Intended to be Covered by the Registration is Wrong under the Ninth Circuit Law of Statutory Construction

Defendants contend that the language of § 409 unambiguously requires that all of the authors and titles of the component works must be set out in the registration application.  Defendants' Brief at 14–19 (discussing the *Muench, Bean* and *Alaska Stock* district court decisions).  Here again, Defendants and the

---

[15] *See* Peters Dec. ¶¶ 12, 18.  In fact, photographers often do not even give titles to their photographic images.  *See* Wolff Dec. ¶ 10.

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

decisions on which they rely are incorrect.  As noted by the United States in its Amicus Brief in *Alaska Stock*:

> . . . . §409 says nothing about how a copyright claimant must register component works.  It simply states that a registration application must include certain information.  The statute does not specify whether an application to register a collective work must include authors' information and titles for every component work sought to be covered by the registration, or whether listing the author's information and title of the collective work alone suffices.  Nor does the statute specify whether the registration of a collective work may cover independently copyrightable component works that the claimant owns, or address the scope of a registration at all.  As to these issues, § 409 is silent.

USA Amicus Brief at 14.  The United States further noted that:

> The only reference § 409 makes to the registration of a compilation makes clear that Congress contemplated that copyrights in compilations could be registered, but does not address the application requirements for – or the scope of – such a registration.  Section 409(9) [only] states that the "application . . . shall include . . . in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered. 17 U.S.C. § 409(9).

*Id.*  Ninth Circuit principles of statutory construction require that § 409 be read in the context and in furtherance of the entire Copyright Act.  As the Ninth Circuit has stated:

> The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute.  The first step in ascertaining congressional intent is to look to the plain language of the statute.  To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme.

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

- 11 -

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir.1999) (citations omitted).[16] Here, the "entire statutory scheme" requires that § 409 not be looked at in isolation, but in a manner consistent with other sections of the Act and the Congressional intent, which was to encourage registration and not allow defendants to use technical errors, inaccuracies or omissions as a sword.[17]  The interpretation of § 409 in the cases relied on by Defendants fails to properly take into account the "entire statutory scheme" as required by the Ninth Circuit.[18]

In fact, if Congress had intended that § 409 required identification of each component work separately, Congress would have stated such a requirement, as it did in § 408(c)(2)(B), which requires the Register to establish regulations permitting a single registration for periodicals, a specific type of group of related works.  There, Congress stated that applications for periodicals must "identif[y] each work separately, including the periodical containing it and its date of first publication."  17 U.S.C. § 408(c)(2)(B).  Section 409, which became effective at the same time as § 408(c)(2)(B), does not place this limitation on the Register. Thus, if Congress had intended that § 409 require the disclosure of all authors, titles and dates of first publication (if published) for all of the component works being registered on a single application, it would have made that clear as it did for the works covered by § 408(c)(2)(B).  But it did not.  *See generally discussion at* USA Amicus Brief at 13–16.

---

[16] *See also Bodine v. Graco, Inc.*, 533 F.3d 1145, 1151 (9th Cir. 2008) (the "meaning of statutory language, plain or not, depends on context" and courts must "construe statutes, not isolated provisions") (internal quotation marks omitted).

[17] *See* discussion *infra* Part III.B.

[18] The *Muench* decision, a Southern District of New York case, did not follow Ninth Circuit rules regarding statutory construction, and therefore is inapposite to the Defendant's arguments.  The two decisions in the Ninth Circuit, *Bean* (decided in the District of Arizona) and *Alaska Stock (*decided in the District of Alaska) are both on appeal.

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

3.      **The Masterfile Registrations Comply with Copyright Office Regulations, Rules and Procedures**

Since § 409 neither specifically addresses the scope of a collective work registration nor explicitly requires that each author and title for each component work being registered must be listed in an application, it is silent as to "the precise question at issue" here, and thus is considered ambiguous under statutory interpretation rules.[19]

Where such ambiguity exists, the law of this Circuit is that the court should defer to the Register of Copyrights where her interpretation of the law is reasonable. *See Batjac Prod., Inc. v. Good Times Home Video Corp.*, 160 F.3d 1223, 1230–31(9th Cir. 1998) (*citing Marascalco v. Fantasy, Inc.*, 953 F.2d 469, 473 (9th Cir. 1991)).[20]   The Copyright Office's interpretation of the Act and § 409 governing the registration of collective works and the component works contained therein, as well as its regulations and practices pertaining thereto are reasonable, and are contrary to Defendants' strained interpretation of § 409 and their misplaced attack on the authority of the Copyright Office.[21]

The Compendium II, long relied upon by the courts in interpreting the Copyright Act,[22] states:

---

[19] *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *see also United States v. Haggar Apparel Co.*, 526 U.S. 380, 392–93 (1999) (statute may be "ambiguous in that the agency must use its discretion to determine how best to implement the policy in those cases not covered by the statute's specific terms").

[20] *See also United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944)).   This includes the interpretations set out in Compendium II. *Id.*

[21] *See* Peters Dec. ¶¶ 3, 26.

[22] *See, e.g., Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 973 (9th Cir. 2008); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1146 (9th Cir. 2003); *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 779–80 (9th Cir. 2002).  *See also Morris v. Bus. Concepts, Inc.* 283 F.3d 502,

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

> Where a collective work is being registered, the application should name the author of the collective work.  The names of the individual authors of separate contributions being registered as part of the claim need not be given on the application.  The registration *may* cover (a) the collective work authorship, (b) any contribution by the employee or other party commissioned by the author of a work made for hire, and (c) any other contributions that the claimant of the collective work obtained by transfer."  (Emphasis added.)[23]

Further, § 408 of the Act expressly authorizes the Register of Copyrights to create regulations permitting "a single registration for a group of related works."[24] Pursuant to this Authority, the Copyright Office enacted 37 C.F.R. § 202.3(b)(5) authorizing registration of an automated database, and § 202.3(b)(4) authorizing registration of a collection fixed in a database as a single work.  The instructions and requirements for registering an automated database and updates to the database are found in 37 C.F.R. § 202.3(b)(5).  It does *not* require that a claimant list each item in § 409 for the constituent works registered in the database.

The complete absence from 37 C.F.R. § 202.3(b)(5) of any requirement that automated database registrations include § 409 information for each component work, while listing several other conditions that must be met by this type of registration, supports the conclusion that the § 409 requirements are not intended to apply only to each separate pre-existing protectable work in the compilation.[25]

This is precisely what the court in *Masterfile Corp. v. Martin Gale d/b/a/ Gale Team, et al.* held.[26]  In a case nearly identical to this one, the Court dismissed

---

505–06 (2d Cir. 2002) (finding the Copyright Office's interpretation as set forth in Circular 62 "persuasive").
[23] Compendium II § 615.06. A "collective work" is a type of "compilation."  *See* 17 U.S.C. § 101 (definition of a "compilation").
[24] 17 U.S.C. § 408(c)(1).
[25] *See* Peters Dec. ¶¶ 18, 20.
[26] Case No. 09-CV-966 (D. Utah Oct. 4, 2011) (a copy of that decision accompanies this Brief as Exhibit 1).

- 14 -

the defendants' summary judgment motion, refused to apply *Muench,* and concluded as follows:

> The disputed images in this case were registered as part of a collected work in an automated database. . . .  Because Masterfile owns the constituent parts of the collection the registration of the collection extends copyright protection to the constituent parts.  *See King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 841 (M.D. Tenn. 2006).

Accordingly, the Copyright Office's interpretation of §§ 408 and 409 of the Act, as followed by Masterfile, is consistent with the 37 C.F.R. § 202.3(b)(5) requirements for automated database registrations, while Defendants' interpretation creates disharmony between the Act and the Copyright Office's authorized regulations.  Fundamental principles of statutory construction require that statutes and/or regulations should be read together and in contextual harmony[27] and that interpretations that create conflicts should be avoided.[28] Further, as earlier noted, the Ninth Circuit has made it clear that a court should defer to the Copyright Office's interpretation of the Act it is charged with administering if its interpretation is "based upon a permissible construction of the statute."[29]  Accordingly, the Copyright Office's interpretation should be upheld, and its requirements for copyright registration – along with the registrations of millions of images – should not be overturned based on Defendants' strained interpretation of the Act.

---

[27] *See In re Moses*, 167 F.3d 470, 476 (9th Cir. 1999).

[28] *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *Nat'l Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477 (1979) (requiring courts to uphold regulations that are in harmony with the statute they purport to interpret).

[29] *Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 (9th Cir. 2006) (*quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984)); *see also Marascalco v. Fantasy, Inc.,* 953 F.2d 469 (9th Cir. 1991) ("We agree that courts should generally defer to the [Copyright] Register's interpretation of the copyright statute . . . the Register has the authority to interpret the copyright laws and that its interpretations are entitled to judicial deference if reasonable.").

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

4.   **Defendants' Argument is Contrary to the Well-Established Rule That Registration of a Compilation Work Extends to the Individual Works Where the Owner of the Collection also Owns the Underlying Works**

It has long been the uncontroverted rule that the copyright registration for a compilation work includes registration of its component works, provided that the owner of both is the same at the time of registration.[30]  This rule not only applies where the authors are the same; it also applies where an author transfers its copyright in an individual work to the owner of the compilation work.[31]  For example, in *Xoom, Inc. v. Imagine, Inc.*, the Fourth Circuit held that a database

---

[30] *See Xoom, Inc. v. Imagine, Inc.*, 323 F.3d 279, 283 (4th Cir. 2003) ("where owner of a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action of the constituent part."); *Educational Testing Servs. v. Katzman*, 793 F.2d 533, 539–40 (3d Cir. 1986) ("The fact that a registrant denominates the material as a compilation does not in itself signify that the constituent material is not also covered by the copyright. In fact, the statutory premise that the copyright in a compilation extends to the constituent material contributed by the author is express. . . ."); *Stewart v. Apple, Inc.*, No. 10-CV-01012 RSL, Dkt. No. 25 at 2 (W.D. Wash. Nov. 8, 2010) ("Defendants' motion raises an issue of law, namely, whether a copyright registration covering a compilation of works permits the registrant to assert an infringement claim on an included work that is also owned by the registrant. The Court finds that it does . . . .  This analysis is not only supported by the case law, it makes practical sense. Many works are, when properly evaluated, made up of multiple copyrightable components: books containing pictures or drawings are an obvious example.").

[31] *See, e.g., Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002) ("if all rights in a constituent work have not been transferred to the claimant, a collective work registration will not apply to the constituent work. If, on the other hand, all rights have been transferred to the claimant, then the constituent work is included in the registration of the collective work.").  The leading copyright law commentators agree with this rule.  *See* David Nimmer, 2 *Nimmer on Copyright* ("Nimmer") §7.16[B][5][c](2010); Paul Goldstein, *Goldstein on Copyright* § 3.15 (2005) ("[i]f the collective work copyright owner also owns the copyrights in the constituent elements of the work, courts have allowed registration for the collective work to serve as registration for the constituent elements as well, at least for purposes of section 411(a)'s requirement of registration as a condition to suit.").

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

compilation registration of clip art also covered the component clip art owned by the compilation owner.[32]

Masterfile is the owner of the registered compilation and each of its component images, and thus is the single claimant of the compilation work. As the sole claimant, its only obligation under the express language of § 409 with respect to identifying the component works and the authors of those works is complying with § 409(9) and any applicable Copyright Office rule. It did just that.[33]

### 5. Technical Issues with the Registration Cannot be Used to Impede Enforcement against Infringement

The passage of the revised Copyright Act in 1976 was the beginning of an era in which formalities that had been part of the original Copyright Act were intentionally discarded. *See* Peters Dec. ¶ 9. One of the first significant formalities to be abandoned was that registration was no longer a condition to obtaining copyright for published or unpublished works created on or after January 1, 1978; copyright automatically inheres in a work the moment it is "created."[34] With the passage of the Berne Convention Implementation Act, effective March 1, 1989, it became law that technical issues with a registration were not to interfere with the ability to enforce against infringement: "As to works first published on or after March 1, 1989, no circumstances can arise in which failure to register would inject the work into the public domain."[35]

In fact, the U.S. Supreme Court held that there are situations in which a copyright owner may proceed with an infringement action even if it has no

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

---

[32] 323 F.3d 279, 283 (4th Cir. 2003)

[33] Accordingly, Defendants' assertion that § 103 of the Act requires a contrary interpretation, *see* Defendant's Brief at 19–20, is erroneous for all of the reasons discussed in the USA Amicus Brief at 23–24.

[34] 17 U.S.C. § 101.

[35] Nimmer § 7.16; *see also* Peters Dec. ¶ 9. All of the works at issue were published after 1989. *See* Gangursky Dec. ¶ 11.

- 17 -

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

registration.  *See Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S. Ct. 1237, 1246, 176 L.Ed.2d 17 (2010).[36]

The 2008 amendment to § 411(b) makes it clear that technical errors in a registration are not to impede enforcement.  This section provides that a copyright certificate issued by the Copyright Office satisfies the pre-suit registration requirement of § 411(a), unless a defendant demonstrates *both* (1) inaccurate information was knowingly included in the owner's registration application and (2) the Register of Copyrights would have refused registration if the Register had known about the inaccuracy of that information.[37]  This is both a codification and extension of the "innocent error rule" long established in case law[38] and in the Ninth Circuit.[39]  This amendment was intended to remove the frequent infringers'

---

[36] "First, and most significantly, § 411(a) expressly *allows* courts to adjudicate infringement claims involving unregistered works in three circumstances:  where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused.  Separately, § 411(c) permits courts to adjudicate infringement actions over certain kinds of unregistered works where the author 'declare[s] an intention to secure copyright in the work' and 'makes registration for the work, if required by subsection (a), within three months after [the work's] first transmission.'"  (Citing 17 U.S.C. §§ 411(c)(1)–(2).)

[37] 17 U.S.C. § 411(b).

[38] See discussion in USA Amicus Brief at 26–27, discussing *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,* 573 F.3d 1186, 1201 (11th Cir. 2009) (noting that under Section 411(b) "[o]missions or misrepresentations in a copyright application can render the registration invalid where there has been intentional or purposeful concealment of relevant information," that "there must be a showing of 'scienter' in order to invalidate a copyright registration," and that "an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application") and *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989).  *See generally* Nimmer § 7.20[B][1].

[39] Section 411(b) codifies and extends what the Ninth Circuit has long held: "absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement."  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1259 (9th Cir. 2011), citing *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1145 (9th Cir.2003) ("inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making the misstatement" (internal quotation marks omitted)).  *See also*

- 18 -

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California  90265

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

1   defense that mistakes in registration applications required dismissal of copyright

2   infringement actions; in other words, this amendment was intended to close the

3   loophole through which infringers like Chaga were able to escape with their

4   thievery.[40]

5       Here, inaccurate information was not knowingly included since Masterfile

6   followed the Copyright Office rules *and* Defendants have failed to show that the

7   Register would have refused registration if aware of any inaccuracy.  As stated in

8   the declaration of former Register Marybeth Peters, Masterfile's applications

9   would not have been so rejected.[41]

10      Defendants also erroneously argue that Masterfile's supplementing some of

11  its registrations with additional names of authors of component images was not

12  proper under § 409.  Defendants' Brief at 17–18.  Defendants' argument is

13  inconsistent with (a) the Ninth Circuit's precedent against invalidating

14  registrations; (b) the plain language of §411(b) of the Act; and (c) the Copyright

15  Office's well established practice of permitting supplements (through

16  "Continuation" sheets) of registrations to add additional information.  *See* Peters

17

18  *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997) ("The case law is
    overwhelming that inadvertent mistakes on registration certificates do not

19  invalidate a copyright and thus do not bar infringement actions, unless the alleged
    infringer has relied to its detriment on the mistake, or the claimant intended to

20  defraud the Copyright Office by making the misstatement.").

    [40] The House Report accompanying the § 411(b) amendment specifically states

21  that it is intended "[t]o *prevent intellectual property thieves from exploiting this

22  potential loophole . . . .*"  *See* H.R. Rep. 110–617, p. 24 (May 5, 2008) (*citing In re

23  Napster, Inc., Copyright Litigation*, 191 F. Supp. 2d 1087, 1099 (N.D. Cal. 2002))
    (emphasis added).

    [41] *See* Peters Dec. ¶ 25.  Defendants' argument that § 411(b)  does not apply

24  because Masterfile's registration violates § 409 by containing omissions of

25  information rather than "inaccurate information" (*see* Defendants' Brief at 17) fails
    to address the proper interpretation of § 409, fails to account for the legislative

26  history behind the amendment that such arguments by infringers be rejected, and
    ignores the Ninth Circuit's long-standing position that any technical errors,

27  deficiencies, etc. in the copyright registration or application not be fatal to a

28  copyright infringement claim.  *See supra* note 40.

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

1    Dec. ¶ 21; USA Amicus Brief at 17 n.4.  Further, since neither § 409 nor the

2    Copyright Office Rules require the identity of these component authors, Masterfile

3    providing this additional information cannot under any circumstances be a

4    roadblock to its claims against a recidivist defendant like Chaga.

5         Thus, even if one were to accept Defendants' strained argument that

6    Masterfile not identifying all of the authors and titles of each component image in

7    its registrations was somehow an error under § 409, both § 411(b) and Ninth

8    Circuit precedent mandate that Defendants' arguments be rejected and that this

9    case must go forward.

10        6.    **Defendants' Claim That They Have a Right to Know All of the**

11              **Authors and Titles of the Component Works Comprising the**

12              **Masterfile Compilation is a Red Herring and Contrary to Law**

13        Defendants also argue that they have a right as members of the public to

14   know all of the names and titles of the component works registered as part of the

15   compilation and that they need to know when the purloined images were first

16   created or published (Defendants' Brief at 6).  This is a red herring.  Not once but

17   now twice, Chaga has been caught using Masterfile's images without authorization

18   images.  It obviously did not need to find out the names and titles of the images it

19   decided to steal, or their dates of creation or publication, before engaging in that

20   unlawful conduct – especially for the 18 images that it has now used twice without

21   obtaining a license or paying any fees to Masterfile.  Further, the Copyright Act

22   does not create a notice system and its database is not intended as a searchable

23   index for would-be infringers.[42]

24

_____

25   [42] As the First Circuit has stated:  "[An] objective of [the deposit requirement]
     might be to give would-be infringers notice of the extent of their civil liability.
26   Yet, this can hardly have been an important legislative goal because a copyright
     owner is free to register any time before filing suit, even after the act of
27   infringement."  *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147,
     1162 n. 26 (1st Cir. 1994).  *See also Nat'l Conference of Bar Examiners v.*

28

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

**B.      Granting Defendants' Motion Would Be Against Important Public Policies, Would Put Back into the Law the Loophole Section 411(b) was Intended to Close, and Would Open the Door to Endless Infringement that Image Libraries Would be Unable to Stop**

The Copyright Office has approved the registrations for compilations of images, such as Masterfile's, that in total cover hundreds of thousands if not millions of photographic images.  Peters Dec. ¶ 22; USA Amicus Brief at 29–30. As the United States of America stated in its Amicus Brief on the Ninth Circuit *Alaska Stock* appeal:

> [F]ailing to apply § 411(b) to registrations such as appellant's would have a devastating effect on millions of registrations in compliance with Copyright Office policies. . . .  [It] would allow infringers to unjustly benefit because of copyright claimant's compliance with longstanding Copyright Office policies.  Moreover, the effects of the district court's reasoning would not be confined to registrations of works within automated databases, since the district court's reading of § 409 would apply equally to the Copyright Office's policies permitting registration of more traditional forms of collective works – such as newspapers and magazines. . . .  Such widespread disruption of millions of copyrights that good faith registrants – and the Copyright Office – believed valid would allow 'intellectual property thieves' to 'exploit[]' a 'loophole' created by mistakes in the application process, contrary to Congress' intent in enacting § 411(b).  H. Rep. No. 110-617 at 24 (2008).

USA Amicus Brief at 29–30.

The only real remedy that image libraries like Masterfile have against infringers like the Defendants here are statutory damages and attorneys' fees, and these are only available with registration 17 U.S.C. § 412.  This is because most

---

*Multistate Legal Studies, Inc.*, 692 F.2d 478, 485 (7th Cir. 1982) (noting "deposit regulations do not amount to disclosure requirements; nor as a practical matter can they function as such since any claimant can register any time prior to bringing suit on an infringement claim").  *See also* USA Amicus Brief at 20–21.

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

1   infringers only steal small numbers of photos, and the legal fees in enforcing

2   copyright against these infringers usually far exceed the potential actual damages,

3   i.e., lost profits or lost license fees.  That statutory damages are available and can

4   be as great as $150,000 per infringement for willful infringement, along with

5   attorneys' fees, creates the necessary *in terrorem* effect against infringers who

6   otherwise believe they that will be able to get away with their thievery without

7   recourse.  If this Court was to adopt Defendants' arguments and construe § 409 in

8   the narrow and dangerous manner they request, it would not only prevent

9   Masterfile from enforcing its copyrights in this case; it would open the floodgates

10  to an unimaginable amount of infringement of millions of images in all of the

11  image libraries, which would not only greatly harm their livelihood, but also the

12  creators that they represent.

13          The very strong public policies disfavoring invalidation of registrations and

14  favoring enforcement against copyright infringement requires that Defendants'

15  arguments be rejected.  The founders of this country ensured that copyrights would

16  be protected by the inclusion of copyright protection in the United States

17  Constitution.  U.S. Constitution, Article I, Section 8, Clause 8.  Permitting

18  infringers like the defendants here to escape liability on a technicality would thus

19  also be adverse to this important Constitutional policy.[43]

20

21  _____

22  [43] Masterfile should not be penalized or prejudiced for following the Copyright
    Office's stated procedure, which the Copyright Office had to develop because

23  image catalogs did not fit neatly into any other category of works, and which stood
    unchallenged for nearly fifteen years.  *See Midway Mfg. v. Artic Intern., Inc.*, 547

24  F. Supp. 999, 1010 (N.D. Ill. 1982) ( refused to invalidate a copyright registration
    in video games where the "applications and procedures followed by [plaintiff] in

25  registering its copyrights were not entirely clear or straightforward" because the
    plaintiff "was attempting to copyright new technology that the Copyright Office

26  had never directly dealt with before."); *Societe Civile Succession Richard Guino v.
    Beseder Inc.*, No. 03-CV-1310, 2006 WL 2917349, at *3–4 (D. Ariz. Oct. 6, 2006)

27  (finding insufficient evidence of intent to defraud where there was correspondence

28  between the Copyright Office and plaintiff concerning questions about the

- 22 -

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

**C.** **This Court Can Stay Decision on this Motion Pending the Ninth Circuit's Decision in *Alaska Stock***

The same legal issues raised on this motion with respect to copyright registration are pending before the Ninth Circuit in the *Alaska Stock* case.[44] Although Masterfile believes that the arguments presented here are sufficient for this Court to deny Defendants' motion, the Court may wish to reserve judicial resources and stay Defendants' motion pending the Ninth Circuit's decision in *Alaska Stock*.[45]   The Court, therefore, may "find it . . . efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F. 2d 857, 863 (9th Cir. 1979).

Stays of district court actions based on appeals pending before the Ninth Circuit or Supreme Court are commonly granted in the Central District of California.  *See, e.g.*, *California Ass'n for Health Servs. at Home v. Sebelius*, No. 11-CV-10618, 2012 WL 893782 (C.D. Cal. Mar. 13, 2012); *Sierra Med. Servs. Alliance v. Maxwell-Jolly*, No. 10-CV-04182, 2011 WL 3837076 (C.D. Cal. Aug. 29, 2011); *Lopez v. American Express Bank, FSB*, No. 09-CV-07335, 2010 WL 3637755 (C.D. Cal. July 13, 2010).

Here, Masterfile submits that the Court's decision on Defendants' Summary Judgment Motion will be simplified if the Court awaits the Ninth Circuit's decision in *Alaska Stock*.  Defendants acknowledge the issues on appeal in *Alaska Stock* and

---

application, and the applications proceeded to registration), *aff'd*, 549 F.3d 1182 (9th Cir. 2008).

[44] The Ninth Circuit oral argument was heard in *Alaska Stock* on July 27, 2011.

[45] "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North Am. Co.,* 299 U.S. 248, 254 (1936); *see also Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir.1983) (holding district court did not abuse its discretion in staying action pending arbitration).

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*Bean* address the question of law that is the cornerstone of their Summary Judgment Motion.  *See* Defendants' Brief at 15: 3–5 and 19: 10–11 (arguing that the district court opinions in *Alaska Stock* and *Bean*, along with another district court opinion, are "directly on point" and that "this court should follow" these decisions).  Accordingly, Masterfile submits that it may be best for the Court to wait for the Ninth Circuit to render a decision on this important issue.[46]

Accordingly, this Court is empowered to stay this motion should it believe that to be the proper course here.

**IV.**

**CONCLUSION**

For all of the foregoing reasons, Defendants' motion for summary judgment should be denied.

DATED:  May 16, 2012                    Respectfully submitted,

                                        HOLMES WEINBERG, PC


                                        By: _____

                                            Steven M. Weinberg


                                            Attorneys for Plaintiff
                                            Masterfile Corporation

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

---

[46] *See Yong v. INS,* 208 F.3d 1116, 1119 n. 2 (9th Cir.2000)  ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority. . . .")

*PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MASTERFILE CORPORATION,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>MARTIN GALE, d/b/a THE GALE TEAM;<br>LAURIE GALE, d/b/a THE GALE TEAM;<br>and GALE SERVICES, P.C., d/b/a THE<br>GALE TEAM,<br><br>Defendants. | **MEMORANDUM DECISION AND<br>ORDER**<br><br><br><br>Case No. 2:09-cv-966<br><br><br>Judge Dee Benson |

Before the court are defendants Gale Services, P.C., Martin Gale, and Laurie Gale's ("the Gale Team") Motion for Summary Judgment (Dkt. No. 19) and plaintiff Masterfile's Motion for Partial Summary Judgment (Dkt. No. 16). The court held a hearing on the motion. At the hearing, Masterfile was represented by Wesley Felix and the Gale Team was represented by Billie Siddoway and Andrew Deiss. After taking the matter under advisement, the court has further considered the law and facts relating to the motion. Being fully advised, the court renders the following Memorandum Decision and Order.

1

**EXHIBIT 1 - Page 1**

## BACKGROUND

The facts of this case are straightforward.  Martin and Laurie Gale are real estate agents who own and operate Gale Services, P.C.  In 2004, the Gale Team purchased an electronic presentation from Real Estate Power Tools.  The presentation was embedded on the Gale Team's website.

Masterfile is a stock photography agency that licenses images for commercial use.  In the spring of 2009, Masterfile discovered that the Gale Team displayed twenty-seven images from the Real Estate Power Tools presentation that Masterfile claims are copyrighted.  On October 28, 2009, Masterfile filed its lawsuit against the Gale Team claiming copyright infringement.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

## DISCUSSION

In order to succeed in a copyright infringement case, "a plaintiff must prove (1) ownership of a valid copyright and (2) unauthorized copying of constituent elements of the work that are original."  *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).  Additionally, any claim needs to commence "within three years after the claim accrued." 17 U.S.C. § 507.

**EXHIBIT 1 - Page 2**

I.  OWNERSHIP OF A VALID COPYRIGHT

"Presentation of a certificate of registration from the U.S. Copyright Office usually constitutes prima facie evidence of a valid copyright."  *Palladium Music, Inc.*, 398 F.3d at 1196; 17 U.S.C. § 410(c). Masterfile claims it owns copyrights to twenty-seven images that were displayed on the Gale Team's website.  Masterfile produced the certificates of registration to each of the twenty-seven disputed images.

The Gale Team contends, however, that Masterfile did not comply with the group registration procedures because the photographer for each of the photos needs to be the same person.  37 C.F.R. § 202.3(10)(ii).  The Gale Team further contends that the court should follow *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 712 F.Supp.2d 84 (S.D.N.Y., 2010).  In the *Muench* case the court held that registration of an automated database does not extend protection to the individual photographs in the database.  As explained below, the court rejects both of these arguments.

First, the court finds that 37 C.F.R. § 202.3(10)(ii), as relied upon by the Gale Team, is inapplicable in this case; it applies only to cases of an individual photographer registering multiple images at once, and not to image libraries.  Because the images at issue in this case were created by multiple photographers, Masterfile does not need to comply with the requirements in 37 C.F.R. § 202.3(10)(ii).

Second, the court declines to apply the reasoning in *Muench* to this case.  The disputed images in this case were registered as part of a collected work in an automated database. "Registration of a collection extends copyright protection to each copyrightable element in the

3

**EXHIBIT 1 - Page 3**

collection." *King Records, Inc. v. Bennett*, 438 F.Supp. 2d 812, 841 (M.D. Tenn. 2006); *See*

Nimmer on Copyright, §7.16[B][2][c]. Masterfile owns, for the purposes of copyright

registration, the copyrights of each of the individual images at issue. (Pigeon Decl., ¶ 2.)

Because Masterfile owns the constituent parts of the collection the registration of the collection

extends copyright protection to the constituent parts. *See King Records, Inc. v. Bennett*, 438

F.Supp. 2d 812,841 (M.D. Tenn. 2006).

Having determined that Masterfile owns copyrights to the disputed images, the must

determine whether there was an unauthorized copying of Masterfile's images.

## II.  UNAUTHORIZED COPYING

In order to show unauthorized copying the plaintiff must show substantial similarity

between the copyrighted work and the defendant's work. *Country Kids 'N City Slicks, Inc. v.

Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).

The Gale Team has admitted that the images on its website and Masterfile's copyrighted

images are "substantially similar."  The Gale Team has also admitted that it did not have a

licence from Masterfile to show the images on the website.  The facts, as they pertain to

unauthorized copying, show that the Gale Team copied the images by placing them on the

website through the Real Estate Power Tools presentation.

## III.  STATUTE OF LIMITATION

Finally, the Gale Team asserts that Masterfile's claims are untimely.  As set forth

previously, any claim needs to commence "within three years after the claim accrued."  17

U.S.C. § 507.  "A copyright claim accrues when the plaintiff learns or in the exercise of due

4

**EXHIBIT 1 - Page 4**

diligence should have learned, that the defendant was infringing its rights." *Techni-Graphic*

*Services, Inc., v. Majestic Homes, Inc.*, 2:02-cv-923-DAK, 2005, WL 357208 (D. Utah 2005).

The Gale Team purchased the presentation in 2004, and claims that Masterfile should

have learned about the existence of the images at that time. The court disagrees. While the Gale

Team may have *purchased* the presentation in 2004, the facts reveal that it was not until 2009

that Masterfile *discovered* the website with the disputed images. There is nothing to indicate

that Masterfile knew or should have known about the disputed images before 2009.

Accordingly, Masterfile's claims accrued in 2009 and are not time-barred.

## <u>CONCLUSION</u>

For the reasons stated above, the Gale Team's Motion for Summary Judgment is

DENIED and Masterfile's Motion for Partial Summary Judgment is GRANTED.

DATED this 4th day of October, 2011.

Dee Benson
United States District Judge

5

**EXHIBIT 1 - Page 5**