STEVEN M. WEINBERG (SBN 235581)
smweinberg@holmesweinberg.com
SHARONI S. FINKELSTEIN (SBN 271829)
sfinkelstein@holmesweinberg.com
HOLMES WEINBERG, PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265
Tel: (310) 457-6100
Fax: (310) 457-9555

Attorneys for Plaintiff
Masterfile Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASTERFILE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CHAGA INTERNATIONAL, a Nevada corporation; STEVE GOULD, an individual; and MICHAEL TIDD, an individual,<br><br>Defendants. | Case No. 12-CV-00850 R (Ex)<br><br>**DECLARATION OF NANCY E. WOLFF, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN LIEU OF ANSWER** |

I, Nancy E. Wolff, hereby declare:

1. I have been a licensed attorney since 1981, and am admitted in California as well as New York, New Jersey and Pennsylvania. I am a partner at Cowan, DeBaets, Abrahams & Sheppard LLP, 41 Madison Ave., 34th Floor, New

1  York, NY 10010, where I specialize in photography law, intellectual property law
2  and digital media law.  I have personal knowledge of the matters set forth in this
3  Declaration and could and would testify truthfully regarding them, if called upon.
4      2. Since the early 1990's I have also served as counsel to the leading
5  stock photography trade association, Picture Agency Council of America. Inc.
6  ("PACA"). Founded in 1951, its membership includes over 100 companies in
7  North America and over 50 international members, from the largest image
8  aggregator to individuals with specialty image libraries. PACA's mission is to
9  foster and protect the interests of the image licensing community and as part of that
10 role it is an active advocate for copyright protection and education. Masterfile, the
11 plaintiff in this action, has been an active member of the association for many
12 years.
13     3. I submit this Declaration in opposition to Defendants' Motion for
14 Summary Judgment in Lieu of an Answer to Plaintiff's Complaint.  This
15 Declaration seeks to provide the Court with the factual background regarding the
16 procedure used by Masterfile in obtaining the copyright registrations here in issue,
17 a procedure that was developed with and approved by the Copyright Office and has
18 been followed in registering countless collections of images by image libraries
19 (also known as stock photo libraries or archives) without objection for the past
20 seventeen years with recent exception of a few first impression rulings by district
21 court judges, none of which have been affirmed by any circuit court, each of which
22 was decided with a misunderstanding of  the  purpose of the registration process
23 and the role of the Copyright Office in creating rules that support the ease and
24 encouragement of registration, and two of which are on appeal to the Ninth Circuit
25 (the third being a Southern District of New York case).
26
27
28

**HOLMES WEINBERG PC**
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

*DECLARATION OF NANCY E. WOLFF*

### A. The Initial Meeting with the Copyright Office.

4. In June 1995, in my role of counsel to PACA, I, along with other executives of PACA's Board, met with senior officials of the United States Copyright Office, including then Register of Copyright Marybeth Peters; Chief Examiner Nancy Petruzzelli; Head of the Visual Arts Section Examining Division Nancy Lawrence; and Assistant Chief Julia Huff. PACA members, consisting of photographic image libraries, represent the images of thousands of photographers. Image libraries are for profit or non-profit entities or individual photographers who act as licensing representatives for photographers in licensing their images for commercial or editorial use. For example, a web design firm looking for images to use on a website might go to the Masterfile website and search for images to license from Masterfile to incorporate in the design of the website. Each such use carries with it a licensing fee that Masterfile charges, and in accordance with its contributor agreement, Masterfile would then pay a percentage of the collected licensing fees to the photographer(s) whose images were licensed.

5. The purpose of this June 1995 meeting was to discuss how image libraries could register large print catalogs containing thousands of photographs from hundreds of photographers, print catalogs being the method of marketing photographs at that time. Given the wide distribution of these catalogs, these images were most at risk for infringement. The difficulty in protecting these published images was that under the then-current Copyright Office registration rules, to obtain copyright in individual photographs, each photographer would have to individually register his or her images and deposit two copies of the entire catalog, a procedure that was burdensome and expensive for the photographer. In addition, it was equally burdensome and unnecessary for the Copyright Office to

*DECLARATION OF NANCY E. WOLFF*

HOLMES WEINBERG PC
30765 Pacific Coast Highway, Suite 411
Malibu, California 90265

receive and maintain two copies of each large stock industry catalog from each of the individual photographers whose work was included in the catalog.

6. One of the primary roles of the Copyright Office, which is a branch of the Library of Congress, is to encourage registration of copyrights in order to make copyrightable wotks available to the public. Thus, as a means for serving this purpose of encouraging registration of the catalogs and individual images that would otherwise not be registered, the Copyright Office provided instructions to PACA on how its members could register the catalogs in a manner that would be cost effective, administratively unburdensome, would protect the individual images and at the same time be in compliance with the regulations then in place. By following a registration procedure then used for registrations of "serial works," the Copyright Office instructed that a transfer of copyright ownership from photographers to their image library would permit the image library, as copyright owner and claimant, to register in a single application for registration both the catalog as a collection of photographs *as well as* the individual photographs owned by the claimant depicted in the catalog.

7. In addition, the Copyright Office, in creating this procedural rule, informed PACA that its members did not need to individually name each author/photographer on the application because the rights were all owned by the image library as copyright claimant. According to the Copyright Office, and pursuant to the authority it had from Congress, this procedure would satisfy the Copyright Office's regulations and would be consistent with the Office's longstanding practice in registering serial works. Serial works were chosen as the model because they were conceptually similar to the image library compilations and using that model would not require the issuance of new regulations.

8. It was understood all along by the Copyright Office and PACA that the primary intent of the registration resulting from this procedure was to protect

the individual images and not the catalog as a compilation *per se,* that is, without the individual images. Accordingly, there was never any intent to evade any rules or avoid legitimate registration fees as the Defendants in this action claim. The purpose of creating this procedure was to encourage registration, thus adding works to the Library of Congress that would otherwise not be deposited. If the registration process was too onerous and burdensome, the Copyright Office was concerned that works would not be registered or deposited, and the Library of Congress, and hence the public which it serves, would be deprived of public access to these works.

9. There were no discussions during our meeting with the leading officials at the Copyright Office regarding an evasion of fees by PACA members or any attempt to avoid satisfying the requirements of Section 409 of the Copyright Act. The Defendants' suggestion that this intent existed is fantasy. The purpose was to find practical ways to efficiently register image rich catalogs within the structure of the existing regulations and to encourage registration, which serves a public interest.

10. Further, all of the parties involved in these discussions were aware that the Copyright Act does not contain any mention that the purpose of registration is to create a searchable database enabling registered works to be readily found, as the Defendants wrongly claim. As all of the participants recognized, this would be a particularly impossible objective when registering images that are not identifiable by any title as many such images are. Many photographers do not give titles to the images they assign to image libraries for licensing, and images are selected by customers by helpful search terms that reflect the subject matter of the image, such a "handshake", "couple walking on beach", and so on, making titles irrelevant for searching purposes.

11. What was discussed by the participants of the meeting was the importance to the public and the Library of Congress of having as many such works as possible be registered and deposited in the Library of Congress and the need for photographers and the image libraries to have a means to register and file deposits that was not financially or administratively burdensome.

12. Based upon the discussions at this meeting, the Copyright Office issued instructions specifically relating to the registration of the component images in the image library compilations. I then prepared and published an article in PACA's newsletter in 1995 (the "1995 Newsletter") describing the registration procedure prescribed by the Copyright Office. A true and accurate copy of the 1995 article is annexed as Exhibit 1 hereto.

13. As a result, many PACA members, including Masterfile, revised their agreements with contributing photographers to obtain ownership, including copyright of the images submitted for representation and following the Copyright Office's instructions, filed for copyright registrations for the image catalogs with the intent, understanding and expectation that the copyright registrations in the image catalogs would protect the individual photographs. I know that Masterfile's contracts with its contributing photographers contain language transferring copyright to Masterfile so that Masterfile is the owner of the individual images that it offers for licensing. I have represented Masterfile separate from my representation of PACA and am familiar with its agreements with its contributors.

**B.    The Register of Copyrights Again Confirms the Image Catalog Registration Procedure is Valid.**

14. In late January 2002, I received an inquiry from a PACA member involved in a copyright enforcement action against an infringer that was infringing

a catalog photograph registered in conformity with my PACA 1995 article, and who had been questioned regarding the validity of a catalog registration by opposing counsel. As a result, I wrote to the Register of Copyright requesting confirmation that the registration procedure followed by image libraries as set forth in the 1995 Newsletter was accurate, and that the copyright registrations previously filed by PACA members are still proper under the Copyright Office's Rules and procedures.

15. On February 12, 2002, writing on behalf of the Register of Copyrights Marybeth Peters, the Chief of the Copyright Office Examining Division Nanette Petruzzelli confirmed that the catalog registrations made by PACA members pursuant to the Copyright Office's instructions were appropriate under the Copyright Office's regulations and the Compendium of Copyright Office Practices, Compendium II ("Compendium II"). The Copyright Office further confirmed that the 1995 Newsletter accurately summarized the Copyright Office's long-followed registration procedures for collective works such as image catalogs. A true and accurate copy of this confirmation letter is annexed as Exhibit 2 hereto.

### C. The Register Of Copyright Continued to Provide Guidance In Registering Catalogs once Catalogs Migrated from Print to Online

16. As technology progressed, PACA members went from marketing images to their customers through physical print catalogs, to sending electronic catalogs on CD-ROMs and then to offering clients online catalogs through their websites. As counsel to PACA, I remained in contact with the Copyright Office to ensure that the registration of the collective works of its members would continue to protect the individual photographs regardless of whether the deposit was print,

CD-ROM, online or other media. In turn, PACA members relied on me for instructions from the Copyright Office on how to properly register the photographic works they were making available for licensing, regardless of the distribution format.

17. Making the catalogs of photographs available to customers online on a searchable database permitted image libraries to offer both their contributing photographers and potential customers value-added services such as searchable descriptions and keywords that would make it much easier for potential licensees to find the specific photograph that they are looking for. For example, if a potential customer was interested in finding images relating to law or lawyers, they could use keywords like "law" or "lawyers" as search terms for finding relevant images.

18. Given this sea change in the manner in which image libraries offered photographs, on behalf of PACA I again contacted the Copyright Office, including the participants in the initial meeting, to confirm that PACA members could continue to use for registering online catalogs a procedure similar (as adapted for online catalogs) to the one the Copyright Office had approved in 1995 for print catalogs. The main difference between print catalogs and online catalogs is that online catalogs, being automated databases, are updated on a regular basis, and thus the registration procedure had to be adapted to allow for these updates and for the fact that online catalogs are dynamic electronic databases rather than print catalogs. Understanding this difference, the Copyright Office confirmed that the procedure instructed by the Copyright Office for registering online catalogs was similar to the existing procedure and that a change in medium (that is, print catalog to online catalog) would not change the practice. The Copyright Office actually assigned a specific examiner, Virginia Giroux, Attorney Advisor, Examining

*DECLARATION OF NANCY E. WOLFF*

Division, to help facilitate registration by reviewing image library copyright applications for online catalogs.

19. Ms. Giroux instructed PACA members to follow the instructions published by the Copyright Office for online databases that allowed for routine updating of content. By treating the online collection of images as an "automated database," it permitted image libraries to file a registration application covering the initial collection of digital images and then file updates at regular intervals, with only the newly added images having to be deposited with the Copyright Office. By allowing online catalogs to be filed as "automated databases" both image libraries and the Copyright Office would be relieved of expending burdensome time, money and resources dealing with registrations covering updates every time a new image was uploaded to an online catalog that already had been registered.

20. This is why image libraries' online catalogs are filed with the Copyright Office as "automated databases." It is in a manner consistent with Copyright Office rules and procedures to identify the medium of delivery, and to protect the individual images, which are at even greater risk of unauthorized reproduction and distribution than images published in a print catalog as they are made available in a digital format, increasing the ease of reproduction and distribution. The fact that the "database" or digital library of individual images also was a "compilation" for purposes of the Copyright Act was incidental to the primary purpose or registering the individual images. PACA members never registered databases as mere compilations, a point many of the district courts have completely overlooked or misinterpreted.

21. Regardless of the medium of the catalog (i.e., physical or digital), the intent of the image libraries and the Copyright Office consistently has been that the individual contributing photographers' works were to be protected, and that having the image library as the claimant (as opposed to each individual contributing

*DECLARATION OF NANCY E. WOLFF*

photographer) was to encourage, expedite and streamline the process of registering the individual images.

22. I personally have had conversations with examiners at the Copyright Office and employees of Masterfile over the years, and have reviewed Masterfile's applications for copyright registration to ensure that they met the requirements of the Copyright Office in protecting the individual images in the catalogs, whether in print or online format.

23. Following my correspondence with the Copyright Office in 2002 and until the Southern District of New York's May 4, 2010 decision in *Meunch Photography, Inc. v. Houghton Mifflin Harcourt Publishing Company et al.*, Docket No. 09-CV-2669 (LAP), the Copyright Office has consistently permitted image libraries to file copyright registrations for their image catalogs – regardless of whether the catalogs were in print or digital – following the instructions it provided seventeen years ago as adapted for online databases.

24. Moreover, throughout that time, the Copyright Office has examined and accepted registrations for print image as well as digital catalogs filed pursuant to those instructions, and image libraries have relied upon those registrations to monitor and enforce the rights in the tens of thousands, if not hundreds of thousands of individual photographs contained in such catalogs.

**D. Defendants' Claims Regarding Plaintiff's Alleged Failure to Utilize the Group Registration Process and That Plaintiff's Registrations Interfere with the Creation of a Meaningful Copyright Record is Misleading.**

25. Defendants appear to assert that Plaintiff attempted to evade the requirements of the Copyright Act by not employing the group registration of photographs procedure.

26. The Copyright Office regulation concerning group registration of photographs, 37 C.F.R. § 202.3(b)(10), is inapplicable for two reasons. First, the group registration of photographs rule does not apply to image libraries because the regulation is limited to group registration of photographs <u>by the same photographer</u>. 37 C.F.R. § 202.3(b)(10)(ii).

27. Second, even if the rule could apply to image libraries, the rule was not effective until August 2001, *see* 66 Fed. Reg. 37142-50 prior to some of the registrations at issue.

28. Accordingly, Masterfile cannot be faulted for not using a procedure that would not have applied to it even if the regulation was promulgated prior to the works' registrations.

29. Finally, Defendant's claim that the registrations at issue cannot protect the underlying images because the registrations do not create an "accurate and searchable record of copyright " is untrue. The deposits that accompanied the registrations at issue contain the name of each of the photographers and a copy of each image, including an image number, which creates a meaningful record of registration. These registrations do not undermine any of the purposes of copyright and in fact serve the vital purpose of encouraging the registration of works.

**E.** **<u>If Defendants' Motion is Granted, the Harm to Image Libraries and Their Contributing Photographers is Real and Serious.</u>**

30. If Defendants' motion is granted, hundreds of thousands if not millions of images that have been registered and accepted by the Copyright Office

will no longer be considered registered, which will open the floodgates to infringement.

31. Given the ease of copying and distributing digital photographs, granting Defendants' motion is likely to increase the already rampant infringement and piracy of photographs. It would give infringers a technical defense against infringement with respect to unauthorized uses of individual images offered in image catalogs and would destroy a copyright owner's ability to obtain statutory damages and attorney's fees. As many image license fees are less than the cost to file suit in federal court, the expectation that image libraries or photographers can bring an infringement action without the benefit of statutory damages and attorney's fees is unrealistic and tantamount to having no copyright protection.

32. Likewise, having a compilation copyright in the arrangement of an image catalog which does not cover the individual images is worthless to PACA's image library members because infringers do not copy entire catalogs; they generally copy only small numbers of images.

33. Granting Defendants' motion also will negatively impact the ability of image libraries and contributing photographers to settle infringement matters because without effective copyright registrations and access to statutory damages and attorney's fees, infringers will less likely to negotiate retroactive licensing fees to compensate photographers for unauthorized uses.

34. For the past seventeen years, many image libraries have followed the same instructions provided by the Copyright Office to protect the underlying photographs of their contributing photographers, first to register print catalogs containing physical prints, and then to register CD-ROM or online catalogs of digital images. The ability to enforce copyright and secure licensing fees for the use of images is vital to the livelihood of photographers and image libraries.

- 12 -
*DECLARATION OF NANCY E. WOLFF*

I declare under penalty of perjury that the forgoing is true and correct. Executed this 14th day of May, 2012, at New York, New York.

_____
Nancy E. Wolff

*DECLARATION OF NANCY E. WOLFF*

# EXHIBIT 1

*DECLARATION OF NANCY E. WOLFF*

# new instructions for completing an application to register a stock photo catalog
## and the photographs published therein.

*By Nancy Wolff, Esq.*

Representing PACA, Alan Carey, Jane Kinne and myself met last June with Marybeth Peters, the current Register of Copyright; Nanette Petruzzelli, the Chief Examiner; Nancy Lawrence, the Head of the Visual Arts Section Examining Division and Julia Huff, the Assistant Chief. Part of the purpose of the meeting was to discuss how the Copyright Office could better serve photographers and agents, in protecting and registering photographs.

For PACA members, a simplified registration of catalogs in a manner that will protect the underlying images is paramount. The results of this meeting and the follow-up conversations and correspondence are recommendations from the Copyright Office on how to register a catalog and complete a Form VA in a manner that will protect both the catalog as a compilation and the photographs.

In order to have one registration form protect both the compilation and the photographs, it is necessary to enter into an agreement with the photographers whose work will be included in the catalog. The agreement must grant the agency legal title in the individual photographs contained in the catalog solely for purposes of copyright registration. We have amended PACA's "Photographer's Exclusive Agency Agreement" to cover this transfer. Having obtained permission to register the catalog and the individual photographs, a Form VA can be completed for the entire catalog. A sample form follows this article. The following are instructions for completing each space.

Space 1 - State the title of the catalog, and under "Nature of the Works", state "Photographs" or "Catalog of Photographs" if the word catalog is in the file.

Space 2a - State the Agency's name. The contribution must be marked as a "work made for hire" in the box. Under the "Nature of the Authorship" none of the boxes are to be checked, but language should be added to state "compilation of photographs". If there is some unique text or introductory material in the language "and text" should be included here as well. This refers to text other than mere caption information.

Space 2b - List the name of three individual photographers whose work is in the catalog on the first line and the number of others. It is not important which three photographers are named. Under the questions, "Was this contribution to the work 'Work Made for Hire?" The response is to check "no". Dates of Birth are optional, as well as information as to the author's contribution to the work being anonymous or synonymous. Under "Nature of Authorship", the box - "photograph" - must be checked.

Space 3 - The year in which the entire work is completed should be listed as well as the date of first publication and the nation in which it was published.

Space 4 - under "Copyright Claimant", the claimant should be the name of the Agency. Under "transfer", the words "by contract" should be included to indicate that the photographers, by contract, have transferred title to the individual photographs.

Space 5 - Should be marked "No" if there has been no registration for an earlier work.

Space 6a - Under "Preexisting Material" identify "certain previously published photographs" to cover any photographs which may have been published prior to the publication of the catalog. Additional material would identify "all other photographs and compilation (and text)" if there is introductory material.

The correspondence should indicate a name of someone at the agency who has filled out the application since the copyright examiner will write or call the designated person if there is a question.

The remaining spaces are self-explanatory, a certificate needs to be completed and name and date filled out.

When a work is published, two specimens are generally required as a deposit. Because of the size and nature of a stock photo catalog, I generally request special dispensation and only submit one catalog. Form VA can be obtained by contacting the Copyright Hotline Number 202-707-9100.

If you have any questions, please feel free to contact me at Cavallo & Wolff. ■

---

**NOTICES**

The articles on the stock industry have been distributed to all members. Let Leo Gradinger, PR Committee Chair, know if you use them in any way.

Leo can be contacted at Zephyr Pictures, 339 North Highway 101, Solana Beach, CA 92071. Phone: 619.755.1200 and FAX: 619.755.3723

Get your paperwork into the Legal Committee ASAP. Send it to Lonnie in the PACA Office at PO Box 308, Northfield, MN 55057.

EXHIBIT 1 - Page 1

# EXHIBIT 2

*DECLARATION OF NANCY E. WOLFF*

COPYRIGHT OFFICE  NF/ld-d



LIBRARY
OF
CONGRESS

Washington
D.C.
20559-6000

February 12, 2002

Ms. Nancy Wolff, Esquire
Wolff & Godin, LLP
118 West 79th Street
New York, New York 10024

Dear Ms. Wolff:

    I am responding on behalf of the Register of Copyrights, Marybeth Peters, to your January 29, 2002 letter to her. Your letter asks about registrations already on record for a large number of stock photo catalogs submitted by various members of the Picture Agency Council of America [PACA]. These registrations were submitted following the instructions which PACA provided to its members concerning copyright in general and registrations requirements for photo catalogs in particular. PACA members are interested in securing for their published stock photo catalogs single copyright registrations each of which extends to the compilation of the photos, any new textual authorship appearing in the particular catalog, and the individual photographs authored by independent photographers.

    The registrations on record for the stock photo catalogs submitted by PACA members generally follow this pattern of information:

    1. The for-hire author of the "compilation of photographs" or "compilation of photographs plus new text" [depending on the contents of the particular catalog] is listed in space 2a of the application form VA [Form VA appropriate for works of the visual arts.].

    2. Space 2b of the form VA lists three individual photographers followed by the phrase "and x [number] others" and the authorship for such individual authors is listed as "photographs."

    3. The claimant, or owner of copyright, is usually listed at space 4 of the form VA as the for-hire author of the compilation authorship.

    4. A transfer statement, such as "by contract" is also listed at space 4, transfer line.

    The above information is acceptable when the accompanying deposit copies are catalogs consisting of photographs and, in some instances, additional textual authorship. The examiner interprets such information to indicate that the claim, or authorship, to which the registration extends consists of the compilation [selection, coordination or arrangement] of photographs and, perhaps, new copyrightable text authorship. Where individuals are listed at space 2a as additional authors, the Office considers the claim to extend also to the photographs themselves because, assuming that the claimant [owner of

EXHIBIT 2 - Page 1

copyright] listed at space 4 is the author of the compilation [usually the stock photo agency], an acceptable transfer statement is also provided in space 4 of the form VA. Thus, the Office interprets the claim to extend to the individual photographic authorship for which the names indicated as space 2b of the form VA are the responsible authors.

In addition to regulatory provisions [37 C.F.R. 201 - 260] concerning the administration of Title 17, the general guide for the examination of claims to copyright is the Office's **Compendium of Copyright Office Practices, Compendium II [1984]**. **Compendium II, sec. 615.07(b)(3)** states that the registration application submitted for a work created by a large number of authors is considered acceptable "if it names at least three of those authors followed by a statement such as 'and (number) others.' " I point out that **Compendium II, 615.07(b)(3)** does further state that the Office prefers the names of all authors by use of continuation sheets. However, the Office has consistently interpreted this preference as just that— a preference but not a requirement and the Examining Division has applied this section of the **Compendium** in its consistent acceptance of fewer than all authors' names in the registration of all categories of works.

I also point out an analogous registration practice in the area of serial works. **Circular 62, Serials,** instructs the registration applicant that "When a serial issue includes independently authored contributions in which all rights have been transferred in writing to the claimant of the entire serial issue, it is not necessary to include the names of the contributors at space 2. Whether those contributors are listed or not, the copyright claim in the serial issue as a whole would extend to those contributions." **Circular 62, at 4 (2000).** This instruction to applicants is an example of the **Compendium's** general principle regarding works having large numbers of contributing authors.

Finally, as you requested in your January 29 letter, I have read the copy of the article on completing an application for registration of a stock photo catalog [PACA News, 1995] which you wrote following a meeting with the Register, other Examining Division managers and myself. The article is an accurate summary of the information which the Copyright Office provided to you in that meeting and also accurately summarizes the registration procedures which the Office has long had in place concerning the registration of collective works such as stock photo catalogs which contain compilation authorship, perhaps new textual or other authorship for which the compilation author is responsible and multiple, separately identifiable, independent works of authorship of individual photographs in which the copyright has been transferred to the party listed as claimant.

Sincerely,

*Nanette Petruzzelli*

Nanette Petruzzelli
Chief, Examining Division

cc: Marybeth Peters
    Register of Copyrights

EXHIBIT 2 - Page 2